May it please the Court, Lawrence Asch for Vividus, LLC and HMX Services, LLC. Those are two compounding pharmacies that brought an antitrust action against prescription benefits managers, Express Scripts and CVS Caremark, along with two others in the State Court of New York. It's a bit unusual in this case as to the procedure that took place after, and it does have implications for the argument, so I'll go into them very briefly. The provider agreements that the parties are under in order to join the networks which give them access to health plans around the country with which pharmacies can't do business unless they're part of that network, those agreements provide forum clauses in the case of Express Scripts, sending it to the Eastern District of Missouri Federal Court. In the case of CVS Caremark, to the AAA arbitration in Arizona, and to other places with other prescription benefit managers. Why didn't you seek relief on the protective order in Missouri? Because we are in an arbitration and there is no link to go from the Eastern District of Missouri from the arbitration discovery process. We are subject to the arbitrator's authority, and the arbitrators tell us what to do and what not to do, and to take discovery pursuant to their rules. So the protective order You can always seek a broadening of the protective order for whatever purpose in collateral litigation or arbitration. You still could go to the judge in Missouri and say, can we have some relief from the protective order? We could do that. It would be asking for relief in a case that's not before the court, though. It's an arbitration in Arizona. So I'm not sure the district court would take that well. All right. So you chose not to do that, not were precluded from doing that. We didn't really get to that point, because there was no argument or discussion about the confidentiality of the documents until we attempted to enforce the subpoena issued by the arbitrators. Had we gotten into that, and that was that's part of my reasoning for requiring that there be a response to a subpoena that's authorized, issued by an arbitrator, without that response, you don't get into issues of confidentiality, territoriality, jurisdiction, or anything else. You get nothing until you get to the district court in Arizona where you're attempting to enforce that subpoena, and then they're raised for the first time. So if we had been presented with a confidentiality issue right away in response, even by letter, it wouldn't really matter, we could then confront that. And the fact we did confront it, we predicted it early on by having the arbitrator include a protective order in the subpoena that was to be served on express scripts, saying you can be governed by the same protective order that you have in your court, we attach it to the subpoena. And of course, if there needed to be further formalities to include it in the proceeding, we could do that. So it never came up, is the problem. Sotomayor, so we have a circuit, there's a circuit split on this issue of how to interpret section 7, apparently. There's three circuits, I think, going one way, the second, third, and the fourth, and then you have the Eighth Circuit going the other way, and it sounds like you're advocating or you're advocating in your briefs that we go the route of the Eighth Circuit. Based on that determination, but I mean, we have to look at the plain language and so I guess I want to hear from you how you think or do you concede that the language in section 7 does not support your position or you think it does support your position? I think the language in section 7 does not address discovery, period. So there's nothing in here about taking discovery and arbitration. It does give subpoena power to the arbitrator to enable it to obtain the same witness appearance, witness documents, but it doesn't say these are the procedures to follow for discovery. But for discovery, you don't need subpoenas? You do. Okay. Especially for third parties. So then if you look at the subpoena power provision, how does that support your position? The subpoena power allows for the arbitrators to obtain jurisdiction, to require that the third party respond and appear, in fact, even broader than Rule 45 would in a jurisdiction they're not a party to, and to bring documents if that's required. Bring with him or them any book, record, document or paper which may be deemed material as evidence in the case. Right. So if you take the word and in the third line where it says attend before any or any of them as a witness and in a proper case to bring with him or them any book, if you just changed it to and or, you would in essence be allowing the arbitrator to bring in the witness, to have the witness bring documents without necessarily appearing before them. My argument is that's included in the powers. The powers are, and if they wanted to go into the process of discovery and arbitration, they would have. The purpose of it was to leave arbitration to arbitrators. And in order to allow them to obtain that jurisdiction, give them the subpoena power. Does that mean that it negates any other efforts by them to obtain documents before an antitrust hearing where it would obviously be complex and much more efficient to digest the documents and materials before the final hearing itself? It does not address it and it shouldn't address it because it was simply devised to bring about the link between the arbitrators and the third parties in order to support jurisdiction. So that's why, yes, it does specifically address bringing in the witness from a foreign jurisdiction and having them bring papers with them. It does not exclude anything else and nor should it. The the. The Arbitration Act wasn't drafted in a vacuum with complete lack of knowledge about how litigation works, I'm sure. And so isn't the absence of pre-arbitration discovery against third parties actually an intentional way to protect people that are not a party to the arbitration? I think the protection is provided by allowing the courts of the United States to oversee or to intervene when required and, in this case, to enforce a subpoena. So the fact that there was not in 1925 any discussion about discovery in an antitrust case or in any other case when it's brought to arbitration, no, it does not suggest that it was intended to be written so that it would avoid those procedures on third parties. And I think the case of Sink v. Aden Enterprises by Judge Gould talks about the language of a statute must be interpreted in its context to effectuate legislation, legislative intent. In this case, the context is an antitrust action with obvious needs for third-party discovery in order to bring about the case. So the use of the Federal Arbitration Act, Section 7, to achieve that end, and Your Honor addressed the circuit split, there's actually a little better balance because the Sixth Circuit, even though possibly in dicta, dealt with the Federal Arbitration Act, Section 7, in the Labor Relations Management Act case and used that provision for the purpose of finding the authority to subpoena third parties for discovery. And then the section of the Fourth Circuit also hedged its bets and said that in exceptional circumstances and where it's absolutely necessary, there is a method by which you could obtain that discovery. So I think going back to Your Honor's question about the intent of the drafter at the time, in 1925, I think we have to bring it forward in order to interpret it in the context to effectuate that legislative intent. And in order to do that, we have to do what stands to reason in a case like this. There's a good article in Appelli's papers. There's a practice pointer written on this point, and this just shows the issue, the absurdity of the result, if you do interpret the statute according to the drafter's words, precisely as they're written in 1925. The practice pointer points out that if documents are required for a full hearing before a full hearing commences, one alternative is for the arbitrator to schedule a brief hearing and to do it by telephone or video conference, have the court reporter in that office and let them bring the documents to the court reporter, and essentially the witness is then appearing before the court. Well, before the arbitrators. In 1925, there was no video conference, no telephone ability to take testimony from a witness and to require them to bring documents before a court reporter. And certainly on the vast amount of documents required in an antitrust case, the court would say, you know, right now you could bring it in the palm of your hands in a hard drive, or in fact in an email, and deliver them. So it's an absurd result to suggest that we now are in an age where you can do that, yet if you interpret the words as they're written without the ability to imply any powers, then you have to bring those documents printed, because that's all they had at the time, a million documents or so, and hand them to the arbitrator or fight over a protective order on confidentiality and how to protect them. But is there go ahead. Aren't there policy considerations? I mean, I don't know for sure, but it seems like arbitration was meant to avoid litigation and not have a parallel trial with everything that's involved in litigation in trial. I mean, so there may be reasons that they, I understand time has changed. You've pointed that out, but there may be other reasons that these provisions were intended to not. I think that's right. I think that's absolutely right. And I think that we've now shifted to the point where major corporations are relying on arbitration for major cases, antitrust cases, much more often. And unless we shift our interpretation and, as Your Honor wrote in Center for Biological Diversity recently, craft appropriate standards and grant relief for that, to achieve that clear legislative purpose, because we have a clear legislative purpose here, there's no doubt, efficient and expeditious resolution of cases. How efficient and how expeditious can you be with an antitrust case? It's difficult, but it would be a lot more difficult if you can't take any third-party discovery. Is there also a rational distinction between people who have contracted to engage in arbitration and third parties who have not? I think there is a reason to do that, and I think that's why the district courts are left with the power to oversee any burdens that may be put on third parties like express groups. And I just want to point out the obvious. In this case, express groups is a defendant in one of the cases and still is in the Eastern District of Missouri. So I don't think the district court would be convinced by burden, especially where we're asking them to produce the same very hard drive that they produced in their case in our arbitration, because it's the only way we can get that evidence. So I do think that there is a reason for the district court to have the power to oversee that process, and that would be the way to address it. Counsel, Judge Gould, if I could ask a question. If the language initially penned in the Federal Arbitration Act is now a bit beyond the times, because it doesn't cover the issue of discovery, and tough, complex cases are being handled in arbitration, how do you answer the argument that changing the language is something that really Congress should do, as opposed to it being done by court interpretation? I think that the courts have done it and will do it, and to the extent that the Federal Arbitration Act does not address discovery at all and leaves it to the arbitration, it is unique in the sense that it is divesting itself of the burden of overseeing the process or procedure by which these arbitrations are held, and simply says, when you need us, come to the district court and we'll deal with the issues that we have to be dealt with. Otherwise, you're in arbitration. Deal with their rules. Let the arbitrators decide. So I don't think Congress has felt the need to intervene in a process where they specifically decided they'd rather put it off to the arbitrators in order to effectuate the process with the policy of the efficient and expeditious resolution of the case. And that's why I think... Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Derek Schaefer here on behalf of the Appellee Express Scripts. Your Honors, we respectfully urge the Court to affirm the lower court's straightforward, careful, well-reasoned ruling as to why arbitrators cannot compel a third party, such as Express Scripts, to produce documents outside of any live hearing and testimony. And I propose to focus on why the district court judge's statutory constraints construction comports with both the express, unambiguous terms of the Federal Arbitration Act 9 U.S.C. Section 7, and also the judicial consensus that has emerged around those terms. And just to focus on your question, Judge McGuire, as to the circuit split that exists here, I want to emphasize, as I start with Section 7, the courts really have not disagreed about the explicit terms of Section 7. The Eighth Circuit in parting ways, as it did in the In Re. Securities Life Insurance Company case, didn't find explicit support for its rule there. It reasoned by implication. The same is true for the Fourth Circuit's dicta in the ComStat case. When it comes to the plain express language of Section 7, the courts have all agreed. And because the statutory language here is unambiguous, it is dispositive. That's what this Court has repeatedly held. That's what your honors have written. And that's exactly what Judge Tucci felt bound by for purposes of the decision below. And in that sense, we submit that the arguments our friends for the other side make really are arguments for Congress, Judge Gould, if the – if Section 7 is to be revised in any way. The Eighth Circuit inferred that in order to obtain the goals of arbitration and do it in a reasonable fashion, that the power that is there to bring people to a hearing allows for some pre-hearing discovery. Anything else is just not efficient. And so they inferred that from the power that is there. Why is that wrong? Well, your honor, I just want to emphasize, I think they did it by implication just as your honor says. And I think the doctrine on this from the Supreme Court and from the Ninth Circuit says that if the plain terms of the statute are clear, that's really the end of the analysis. It would be incumbent upon Mr. Ashe to show something he doesn't even purport to show, really, which is that that is absurd. That is an indefensible reading. Congress could not have meant it. And when you look at the plain terms of Section 7, I just want to emphasize how clear those are. The key portion says the arbitrators may compel any person to attend before them and in a proper case to bring with them any book, record, or document. So that compulsion of the documents follows from the witness at a hearing before the arbitrators. It's clear in that on-point language. But the sentence goes on to specify the substantive touchstone that governs the arbitrator's determination. And what is that substantive touchstone? It's very different from what we're accustomed to under the Federal rules and sprawling Federal civil discovery. It says the arbitrators may be compelling that which may be deemed material as evidence in the case. So that is a very designedly narrow touchstone, and it's pegged, of course, to what's happening at the actual hearing before the arbitrators. Is this material as evidence? That's what determines the compulsion. And when you go on to the end of Section 7, when it comes to what a district court may be compelling after the arbitrators have subpoenaed, it says, upon petition, the United States district court, it goes on, may compel the attendance of such person or persons before said arbitrator or arbitrators. So the statutory provision, it's not just clear, Your Honors, it is triply clear that Congress thought about this and meant to say what arbitrators can compel, specifically as to a third party, is confined. It is confined to a live hearing before the arbitrators and the witness and evidence that may be deemed material. And so we think Congress has resolved this appeal and dictated affirmance based upon that plain language. And it's surprising to hear Mr. Ash say, well, let's not relieve a discovery provision at all, Mr. Ash says, because they weren't thinking about anything preceding the hearing. Well, you can't make that argument, Your Honors, with all due respect. The reason why is that Rule 45, Federal Rule of Civil Procedure 45, as to third party, a district court's power of compulsion was pegged to actually having a witness. And if a witness, a third party witness, was compelled to attend, then that witness might be required to bring documents. And Congress made a judgment, Judge Gould, it decided in 1991 that that rule would be changed through the power of Congress to expand third party discovery and say the requirement of a witness would be shed. And so now Federal Rule of Civil Procedure reads differently. But it's telling, and I think confirmatory, that Congress did not make that change to Section 7. It instead made the reasonable policy choice that I think is evident from the face of the statute. But Judge — then-Judge Alito, for the — writing for the Third Circuit in the Haygroup case, went on in page after page after page to explain why this explicit language that we were just focusing on is perfectly consistent with multiple policies behind the Federal Arbitration Act. One is just as you were saying, Judge Gretzner, it's — it's that this is a third party, after all. They haven't agreed contractually to arbitrate. So Congress wants to be that much more solicitous to third parties. And — What do you make of the distinction that the Eighth Circuit seemed to be making that there's a difference depending upon how involved the third party is in the subject matter of the arbitration? Your Honor, I certainly understand the court's reasoning. I don't see where they get that from the statute. It's Congress that makes the policy choices. And there's no express statutory hook. There's no suggestion of that hook in Section 7. And I would simply emphasize in this case, Your Honor, the arbitration in question is clearly between HMC and CVS, a competitor of Express Script. Express Script has no dog in that fight. It is — it is a total third party, and it never agreed to that arbitration provision. In some of these cases, you see relationships between the parties where it's a coalition of entities that have entered into an arbitration agreement, and then one separate entity is being pulled in by virtue of that. We don't have that. The contract that leads to the arbitration between CVS and HMC, the one that the subpoena comes out of, that is a contract that was entered simply between HMC and CVS. Again, CVS, a competitor of Express Script. So Express Script is a total stranger to that arbitration. And we would submit even if it made some difference to Section 7, whether there was some relationship the third party had to the underlying arbitration, here we would be on the right side of that rule. And I want to emphasize one other aspect of the development of the case law here, which is the cases that my friends to the other side rely upon, that threat of case law ends in 2000. It really ends with the Eighth Circuit's decision in Inree Security Life Insurance Company. Subsequent to 2000, you can look at all the cases that have been cited to you, and on page 15, footnote 1 of our brief, you'll find a collection of district court decisions, just citing, looking at the precedents that are out there and determining what's persuasive. Every single one of those cases cited in the briefs goes our way. So the past 17 years, the courts have been looking at the same express terms of Section 7 that we were looking at. They've been looking at then-Judge Alito's decision for the Third Circuit, the Second Circuit decision that then follows that in Life Receivables Trust, and everyone's been gathering around what is now, I submit, the emerging consensus rule. And in the Second Circuit's decision, the Life Receivables Trust case, they cite one of the authoritative commentators out there, Omki, in the reference to the emerging rule. I would just note, Your Honors, that 2017, the latest update that you have from Omki, Omki again refers to our position, Judge Tucci's position in the court below. It refers to that as the emerging rule. You can find that at 76 Amjuror Trials 1, Section 13. And so HMC can't get around the express terms of the statute unless it shows it to be absurd. Again, I was mentioning that there's clear Ninth Circuit precedent for that proposition. There's also clear Supreme Court precedent for that proposition. And HMC doesn't come close to showing that the language of Section 7 and the rule followed by the district court below results in any absurdity. To the contrary, there's a rational and fair policy choice that Congress has made, that they don't want discovery and arbitration, certainly discovery from third parties, to be sprawling, to be vast, to be reaching into thousands upon thousands of documents. And I'd simply note, Your Honors, that is the scope of the subpoena in question. The amount of documents that were produced in the Missouri action between express scripts and HMC, that is upwards of 17,000. All of those documents are called for by the arbitral subpoena. And Congress has made a conspicuous choice. I think it's clear from Section 7 itself, but especially when you look at Section 7 in juxtaposition to Rule 45, Congress has gone a different route with third-party discovery under the Federal rules, and it's kept arbitral discovery from third-parties narrow and circumscribed. And you also have Judge Alito writing for the Third Circuit in Hay Group and looking specifically at the policies that he saw reflected in Section 7, and explaining why they're perfectly reasonable choices for Congress to have made. And so the only argument they're left with, I think, Judge Gritzner, is the one you were suggesting, that it's kind of reasoning by implication or greater includes the lesser power. That's how I think it's formulated by our friends to the other side in their brief here. With all due respect, I don't think that this is a lesser power. It is a new and additional power for arbitrators outside the context of any hearing to subpoena a third party to produce untold numbers of documents. You might be accustomed to that happening in sprawling Federal civil discovery, but, of course, arbitrations are meant to be different. They are meant to be more narrow and streamlined. And that is a valid policy choice for Congress to have made and for Congress to stick to. And, again, you see that in how Congress has modified the one Federal rule, but not modified Section 7. Just two points in closing. We don't believe that there's any separate question in this case about forcing express scripts to respond to a subpoena that's suggested, I think, by HMC in their brief, that this Court should basically be at least remanding for us to be made to answer the subpoena. Under our reading of Section 7 and under the district court's reading of Section 7, there's no authority to issue this arbitral subpoena. If you look at the face of the subpoena, it's in page 101 of the excerpts of record. It says on its face, this is not to be a deposition. There's no witness testimony happening. That makes it ultra viris. It makes it unauthorized under Section 7. And, again, in the closing part of Section 7, the power that a district court has to compel is power to compel a witness's attendance. That's the decision the district court is making. Should a witness be made to attend consistent with an arbitral subpoena or not? There's no contemplation in Section 7 that a district court would be compelling response to a subpoena. And even in terms of the other circuits, if you look at, for instance, what the Second Circuit did in life receivable trust, there was no suggestion there that a party resisting a subpoena, a third party resisting a subpoena, would have to respond to arbitrators. After all, it's a stranger to the arbitration. There's no obligation to do that. It's really a question for the district court. It was teed up for the district court and decided by the district court that this was not a valid subpoena for all the reasons we've submitted. And that leaves me solely turning to the alternative ground for affirmance. And I think, Judge Gritzmer, you put your finger on this right at the outset. It is, I think, undisputed at this point that HMC has not gone ever to the Eastern District of Missouri and sought modification of the protective order that's governing there. All the documents in question were turned over by Express Scripts solely pursuant to that protective order and in reliance upon the protective order. It is critical from Express Scripts' perspective that competitors like CVS not see this information. It is extremely sensitive. It is proprietary. It's kind of the secret sauce for a pharmacy benefits manager about how they make determinations as to what compounds will be covered, under what circumstances and what pricing, reflects all sorts of data that is unique to Express Scripts. And it includes patient information, provider information, things that are protected by HIPAA. So the terms of that protective order are sacrosanct. It was never contemplated by Express Scripts that these documents would be seen by CVS. As soon as Mr. Ashe were to secure compliance with this subpoena, we would lose control over the documents. We wouldn't even have a witness who would be present at an arbitration, nor would we as counsel be present at the arbitration. CVS would be getting, from our perspective, unfettered, problematic access to these materials. If Mr. Ashe has an argument to make as to why he should be able to contravene the terms he agreed to in Missouri and go beyond the limited purposes that these documents were being produced for, he should have made that argument to the district court in Missouri. There is no dispute he has not done that, nor is there any dispute that Federal courts looking at this question, what deference is owed to an issuing court that has a governing protective order, that should be the first step. It should not be the last step. It should not be an afterthought. Here, there is an effort, in our view, to circumvent the Missouri court and the Missouri court's protective order, and that is a reason, too, why this subpoena should not have been enforced. In fact, it's not even clear from the record that the arbitrators knew that what they were ordering, what they were compelling, would be at odds with the governing protective order in Missouri. So for both of those reasons, we would respectfully ask this Court to affirm. Thank you. I can't remember. Did you have any time remaining? I don't think you did. I'll give you one minute, one minute. I think the issues that counsel raised about the confidentiality really bring out the purpose to the Federal Arbitration Act's linking of the district court's supervision. So if the district court felt it necessary to compel a witness to produce documents but heard argument from Express Scripts that they would be highly confidential documents and should not be reviewed by CVS, the district court certainly has the authority to dictate the terms under which those documents would be produced. So it shows how the Federal Arbitration Act does have the tools necessary to devise a method by which the documents could be produced. The subpoena power that it gives, the absurdity of the result is the whole issue of extraterritoriality, and it gives that to parties that they're not in the District of Arizona, but they're here because the FAA requires them to be here. So it's those powers that allow the arbitration to do what it's doing by forcing third parties to produce documents or to make appearances. And that is the burden. We're trying to avoid the burden. Okay. Thank you very much. Appreciate it. Thank you for your arguments, Mr. Esch and Mr. Schaffer. Very helpful. The matter of Vividius v. Express Scripts is now submitted. That concludes our calendar for today, so we are adjourned. Thank you very much.
judges: Gould, Murguia, Gritzner